UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
MARCUS L. WILLIAMS,                )
                                   )
            Plaintiff,             )
                                   )
        v.                         )    Civil Action No. 13-0968 (KBJ)
                                   )
ERIC FANNING, *Secretary of the Air* )
*Force*, *et al.*,                 )
                                   )
            Defendants.            )
_____)

## MEMORANDUM OPINION

Plaintiff Marcus L. Williams ("Plaintiff" or "Williams") is a former member of the United States Air Force ("Defendant" or "Air Force"), who was convicted at a 2002 court-martial of violating the Uniform Code of Military Justice. (*See* Mem. in Support of Def.'s Mot. for Summ. J. and Opp'n to Pro Se Pl.'s Mot. for Summ. J. ("Def.'s Mem."), ECF No. 21, at 4-5.)[1] One element of Williams's sentence was a Dishonorable Discharge from the Air Force. (*See* Ex. 4 to Def.'s Mem, ECF No. 21-1, at 12.) This is the third lawsuit that Williams has filed related to his separation date, court-martial, and discharge from the military, and the second in this court. *See Williams v. Dep't of the Air Force*, No. 10-1448, 2010 WL 3417853 (D.D.C. Aug. 20, 2010), *aff'd*, 409 Fed. Appx. 357 (D.C. Cir. Feb.18, 2011); *Williams v. United States*, 71 Fed. Cl. 194 (2006).[2]

---

[1] Page numbers throughout refer to the numbers that the Court's electronic filing system assigns.

[2] In the instant suit, Williams names as defendants the Secretary of the Air Force and Major General Alfred Stewart, who was the Commanding Officer of the Headquarters Air Force Personnel Center at the time Williams filed the operative complaint. (*See* Compl. Under the Privacy Act of 1974 and for Injunctive Relief ("Compl."), ECF No. 9, ¶ 6.) Because the only proper defendant in a suit under the

Following his conviction, Williams submitted a number of Privacy Act requests to the Defense Finance and Accounting Service ("DFAS"), an entity that is independent from the Air Force, seeking records regarding his pay and separation from the military. (Decl. of Hattie D. Simmons ("Simmons Decl."), ECF No. 21-3 at 1-3, ¶¶ 3-4.) In response to one of those requests, DFAS provided Williams an erroneous e-mail stating that DFAS had received an order indicating that Williams's discharge from the Air Force was a Bad Conduct Discharge in 2002, rather than a Dishonorable Discharge in 2004. (Ex. 3 to Compl., ECF No. 9-1, at 13.) This e-mail led Williams to submit to the Air Force the Privacy Act request that is at issue in this case, which sought a copy of this 2002 Bad Conduct Discharge order and other documents related to his separation from the Air Force. (Ex. 6 to Compl. ("Privacy Act Request"), ECF No. 9-1 at 27-29.) The adequacy of the Air Force's search for those records forms the basis for Williams's pro se complaint, which alleges that Air Force improperly failed to release the documents he requested or otherwise respond to his request. (Compl. ¶ 15.)[3]

Before this Court at present are the parties' cross-motions for summary judgment. The Air Force asserts that it only learned of the Privacy Act Request as a result of this lawsuit, that it has now satisfied its statutory obligations by conducting reasonable and adequate searches for the documents Williams requested, and that those searches did not unearth any responsive documents. (Def.'s Mem. at 6-11.) Williams,

---

Privacy Act is the agency, the Court will dismiss any claims brought against these officers in their individual capacities and proceed with the Air Force as the sole defendant. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006).

[3] Williams's original complaint contained two additional counts seeking declaratory relief against the Air Force relating to his separation date and his court-martial. (*See* Compl. Under the Privacy Act of 1974 and Decl. J. Act for Injunctive Relief ("First Compl."), ECF No. 1.) The Court dismissed these two additional claims on its initial review of the Complaint. (*See* Mem. Opinion & Order, ECF No. 3, at 2-3.) Williams filed the operative amended complaint on August 1, 2013. (*See generally* Compl. Under the Privacy Act of 1974 and for Injunctive Relief, ECF No. 9.)

on the other hand, asserts that the Air Force did not conduct reasonable searches for documents. (Reply to Defs.' Opp. & Resp. to Defs.' Cross-Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 26, at 13.) Because this Court find that the searches the Air Force conducted were reasonable and adequate, it will **DENY** Williams's motion for summary judgment, and will **GRANT** Defendant's motion and enter judgment in its favor.[4] A separate order consistent with this opinion will follow.

I. **Factual Background**

On January 11, 2002, while serving as a Staff Sergeant in the Air Force, Williams was convicted at court-martial on six counts of violating the Uniform Code of Military Justice. (*See* Def.'s Mem. at 2-3; Ex. 3 to Def.'s Mem. ("Rpt. of Result of Trial"), ECF No. 21-1, at 7-9.) A military judge sentenced him to a "Dishonorable discharge, confinement for 10 years, and reduction to airman basic[,]" and this sentence, except for the Dishonorable Discharge, was executed through General Court-Martial Order No. 8, dated May 3, 2002. (Ex. 4 to Def.'s Mem., ECF No. 21-1, at 10-12.) The Dishonorable Discharge was executed through General Court-Martial Order No. 132, dated August 30, 2004. (*See* Ex. 7 to Compl., ECF No. 9-1, at 44.) Thereafter, the Air Force executed a Request and Authorization for Separation on October 1, 2004, which was effective that same date. (*Id.* at 45.)

---

[4] Williams has also filed two additional motions: [32] Motion for Leave to File Amended Motion for Summary Judgment ("Am. Summ. J. Mot.") and [40] Leave Request for Plaintiff Marcus L. Williams to File [a] Second Amended Response to Defendants['] Cross Motion for Summary Judgment ("Am. Resp. Mot."). In these documents, Williams argues that he separated from the military on May 3, 2002 (*see* Am. Summ. J. Mot. at 10; Am. Resp. Mot. at 9), and that the Air Force therefore should have searched an additional database that houses records for servicemen discharged prior to 2004. (*See* Pl.'s Am. Resp. to Defs.' Stmt. of Material Facts, ECF No. 40-1, ¶ 16(b).) But, as this Court has already found, the correctness of Williams's separation date of October 1, 2004 was adjudicated in one of his prior cases (*see* Mem. Op. & Order, ECF No. 3, at 2-3), and the Court rejects Williams's attempt to make an end-run around the preclusive effect of this decision through his Privacy Act claim. Accordingly, the Court will deny both motions for leave to file.

3

Following his conviction, Williams submitted a number of Privacy Act requests to DFAS, an office in the Department of Defense that is independent from the Air Force. (Simmons Decl. ¶ 4.)[5] In response to one of these requests, Williams received an email dated February 18, 2002, which stated—in error—that DFAS had been "in receipt of General Court Martial Order # 8, dated May 3, 2002 that states *Bad Conduct Discharge* is to be executed on [Williams]." (Ex. 3 to Compl. at 13 (emphasis added).) In an apparent attempt to verify DFAS's assertion that he had received a Bad Conduct Discharge in 2002 rather than a Dishonorable Discharge in 2004, Williams submitted a Privacy Act request to the Headquarters Air Force Personnel Center ("AFPC") seeking source documents related to the purported May 3, 2002, order for a Bad Conduct Discharge referenced in the DFAS e-mail. (*See* Pl.'s Privacy Act Req.) Among the specific documents he requested were: a) General Court-Martial Order No. 8 dated 3 May 2002, directing a Bad Conduct Discharge; b) Request and Authorization for Separation (AF IMT 100) effective DOS on 3 May 2002; and c) Certificate of Discharge or Release from Active Duty (DD Form 214) effective on 3 May 2002. (*See* Privacy Act Req., ¶¶ A(1), B(1), B(2), & C(3); *see also id.*, ¶¶ B(3), (C)(1), & (C)(2) (requesting additional related documents).) Receiving no response to the Privacy Act Request, Williams initiated this lawsuit on June 26, 2013. (*See generally* First Compl., ECF No. 1.)

The Air Force claims that it learned of the Privacy Act Request only after it was served with this lawsuit because Williams sent his request to the wrong address. (*See* Decl. of Frank Samudio, Jr. ("Samudio Decl."), ECF No. 21-3 at 4-7, ¶ 4.) Once it had

---

[5] "DFAS is not an agency or division within the Air Force; nor is the Air Force an agency or a division within DFAS. DFAS is a separate entity that works with all four armed services." (Simmons Decl. ¶ 4.)

4

the request in hand, the Air Force maintains that it searched its Automated Military Justice Analysis and Management System ("AMJAMS") and Automated Records Management System ("ARMS") databases for responsive records. (*See* Simmons Decl. ¶ 2 (describing search of AMJAMS database); Decl. of John L. Sabo ("Sabo Decl."), ECF No. 21-3 at 8-11, ¶¶ 3-6 (describing multiple searches of ARMS database).)[6] The Air Force did not locate the specific documents that Williams requested through these searches. Rather, it located "General Court-Martial Order No. 8, dated 3 May 2002, directing a Dishonorable Discharge" in AMJAMS, (Simmons Decl. ¶ 3), and "a) General Court-Martial Order No. [1]32, dated 30 Aug 2004, executing the Dishonorable Discharge; b) Request and Authorization for Separation (AF IMT 100) effective Date of Separation ('DOS'), *1 Oct 2004*; and c) Certificate of Discharge or Release from Active Duty (DD Form 214), effective *1 Oct 2004*" in ARMS (Sabo Decl. ¶ 4 (emphasis in original)). In light of this, the Air Force asserts that it would have provided a "No Records" response to Williams had it received The Privacy Act Request outside of this lawsuit. (Samudio Decl. ¶ 6.)

## II. Legal Standard For Summary Judgment Under Rule 56

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the

---

[6] AMJAMS "is the statistical database the Air Force uses to track all actions relating to military justice from investigation to archive and staging." (Simmons Decl. ¶ 2.) AMJAMS "also automates the generation of military justice actions (nonjudicial punishment and courts-martial), tracks events . . . as the case progresses through the trial and appellate processes, and produces management reports of various types." (*Id*.) ARMS is the database in which the Air Force maintains military personnel records for service members who separated from the Air Force on or after October 1, 2004. (Samudio Decl. ¶ 6.)

governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The "party seeking summary judgment always bears the initial responsibility of [stating] . . . the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The nonmoving party must then go beyond the pleadings and with "affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

An agency seeking summary judgment in a case challenging its response to a request for records, whether that request is made under the Privacy Act or FOIA, must show that it conducted "a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (internal quotation marks omitted). "The agency must establish through affidavits or declarations the adequacy of both its search methods (where and how it looked for responsive records) and the scope of its search (what it was looking for)." *Looney v. Walters-Tucker*, 98 F. Supp. 2d 1, 3 (D.D.C. 2000). The agency's affidavits must be "relatively detailed and non-conclusory[.]" *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (internal quotation marks and citation omitted). Although the agency declarants need not "set forth with meticulous documentation the details of an epic search for the requested records," they must show "that the search

6

method was reasonably calculated to uncover all relevant documents." *Looney*, 98 F. Supp. 2d at 3 (internal quotation marks and citation omitted). Notably, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch*, 692 F.2d at 771). Moreover, in analyzing the reasonableness of an agency's search, "[t]he issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Truitt*, 897 F.2d at 542 (internal quotation marks, emphasis, and citation omitted).

### III. ANALYSIS

Defendant asks that the Court grant summary judgment in its favor because its search for responsive records was reasonable and adequate as a matter of law, and thus no genuine issues of material fact remain. (Def.'s Mem. at 8-12.) Plaintiff also requests that the Court grant summary judgment in its favor, claiming there is no dispute that the Air Force failed to comply with the Privacy Act and questioning the reasonableness of the searches the Air Force conducted. (Pl's Reply at 1, 13.) As noted above, in a Privacy Act case, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original). "FOIA requires government agencies to describe their searches in enough detail for a court to determine whether the search was sufficiently exhaustive to satisfy the Act." *Sennett v. DOJ*, 962 F. Supp. 2d 270, 277

7

(D.D.C. 2013). "To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). Here, the Air Force has included with its motion for summary judgment three declarations: one from Hattie D. Simmons, Chief, Appellate Records, Headquarters Military Justice Division, Joint Base Andrews, MD, (*see* Decl. of Hattie D. Simmons, ECF No. 21-3 at 1-3); one from Frank Samudio, Jr., FOIA/Privacy Act Manager, AFPC Joint Base San Antonio-Randolph (*see* Decl. of Frank Samudio, Jr., ECF No. 21-3 at 4-7); and one from John L. Sabo, Custodian of the Air Force Military Master Personnel Records, AFPC Joint Base San Antonio-Randolph (*see* Decl. of John L. Sabo, ECF No. 21-3 at 8-11.) As explained below, these declarations eliminate any material questions of fact regarding the scope of the search and also effectively dispose of any adequacy issue.

In her declaration, Simmons states that her office functionally manages the AMJAM database, which contains military justice records. She further states that her office searched AMJAM for documents related to Williams's purported 2002 Bad Conduct Discharge, including the specific documents he identified in his complaint, using Williams's name and social security number. (Simmons Decl. ¶¶ 3-4.) The search did locate General Court-Martial Order No. 8, dated 3 May 2002, directing Williams's Dishonorable Discharge, but no documents related to a Bad Conduct Discharge. (*Id.* ¶ 3). In his declaration, Samudio identifies ARMS as the relevant database that would contain Williams's military personnel records and states that he directed Sabo to search ARMS for responsive records using Williams's social security

8

number. (Samudio Decl. ¶ 6). Sabo states in his declaration that he searched ARMS three times for the documents Williams requested, using Williams's social security number as his search term, but did not locate any records referencing the purported Bad Conduct Discharge. (Sabo Decl. ¶¶ 4-5). Nor was he able to locate any Request for Separation or Certificate of Discharge dated May 3, 2002. (*Id.* ¶ 5; *see also* Compl. ¶ 4 (requesting Request for Separation and Certificate of Discharge dated May 3, 2002.) Through his searches, Sabo staff did locate other records and released them to Williams in their entirety. (*See* Sabo Decl. ¶ 4.)

In the Court's view, the declarations of Simmons, Samudio and Sabo—which are presumed to have been submitted in good faith and are entitled to great weight—are sufficient to carry Defendant's burden of showing that it conducted "a search reasonably calculated to uncover all relevant documents[.]" *Truitt*, 897 F.2d at 542 (internal quotation marks and citation omitted). Air Force staffers identified the two relevant databases (ARMS and AMJAM) and searched those databases using broad parameters—Williams's full name and/or social security number—that would have pulled up any responsive records. Sabo went so far as to rerun searches in ARMS to ensure that he had captured all responsive records. (Simmons Decl. ¶ 3; Samudio Decl. ¶ 6; Sabo Decl. ¶ 5-9.)[7]

In challenging the adequacy of the searches, Williams argues—without citing any evidence—that he "believes that no reasonable search was ever conducted in

---

[7] Williams challenges the search of AMJAMS, asserting that it "is at best questionable" because that database "only covers categories of individuals whom are subjected to the Uniform Code of Military Justice (UCMJ)" and that he was not subject to the UCMJ at the time of his court martial. (Am. Resp. Mot. at 9.) The Court of Federal Claims rejected this precise argument in a prior matter that Williams filed, *see Williams v. United States*, 71 Fed. Cl. 194, 201-202 (2006), and this Court finds that Williams is precluded from litigating the issue in this case. *See Ashe v. Swenson*, 397 U.S. 436, 443-44 (1970); *Rosendahl v. Nixon*, 360 Fed. Appx. 167, 168 (D.C. Cir. 2010).

9

response to his Privacy Act of 1974 request." (Pl.'s Reply at 13.) But it is well-established that "the presumption of good faith" that accompanies agency affidavits submitted in the Privacy Act or FOIA context "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (internal quotation marks and citations omitted); *see also Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search." (quoting *SafeCard Servs.*, 926 F.2d at 1201)). Williams here has provided nothing beyond rank speculation that the Air Force did not conduct the searches that its declarants have described under oath.

That these searches in fact located records related to Williams's discharge underscores the adequacy and reasonableness of the searches. What is more, the Air Force has proffered a reasoned explanation for why the Air Force was not able to locate records that corroborate the e-mail Williams received from DFAS:

> DFAS is not an agency or division within the Air Force; nor is the Air Force an Agency or Division within DFAS. . . . The Air Force did not execute a "Bad Conduct Discharge" certificate on Plaintiff. DFAS's e-mail, referencing to a 'Bad Conduct Discharge,' is inaccurate. . . . The only source documents ('source documents' meaning those used to execute and adjudge the sentence) created and in existence execute the dishonorable discharge adjudged at trial, approved by the court-martial convening authority, and affirmed by the Air Force Court of Appeals.

(Simmons Decl. ¶ 4.)

Williams's argument that DFAS "is a routine client on the Court-Martial Order Distribution list" and therefore "actually received a copy of the controversial General Court-Martial Order No. 8, dated May 3, 2002" is unpersuasive. (Pl.'s Reply at 11.) It

10

is undisputed that the Air Force and DFAS are distinct, and that the Air Force does not control DFAS. (Simmons Decl. ¶ 4.) Accordingly, the mere fact that DFAS may receive information about court-martial proceedings from the Air Force does not establish that any information DFAS may in turn convey about a particular court-martial is accurate.

In short, because Defendant has carried its burden of showing that it conducted a reasonable and adequate search for responsive records, and because Plaintiff has provided no reason for the Court to conclude otherwise, the Court will grant Defendant's motion and enter summary judgment in its favor.[8]

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that the Air Force's search for records responsive to Williams's request was reasonable and adequate, and that the Air Force is therefore entitled to summary judgment. Accordingly, Plaintiff's motion is **DENIED**, and Defendant's motion is **GRANTED** and judgment is entered in its favor. A separate final order accompanies this Memorandum Opinion.

DATE: August 11, 2014

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[8] Plaintiff includes an additional argument at the end of his summary judgment reply about his not receiving a "Final Accounting of Military Pay." (Pl.'s Reply at 16.) This issue is not properly before the Court because it does not relate to the adequacy of the search for records responsive to the Privacy Act Request.

11